Good morning, your honors. May it please the court. My name is Andre Clark. On behalf of the petitioner, Mrs. Nacia Sampson, I would like to reserve three minutes for rebuttal. Your honors, the issue before the court today is as follows. Whether the district court erred in dismissing Mrs. Sampson's constitutional claims under the First and Fourteenth Amendment to the United States Constitution on qualified immunity grounds, where a government social worker, where she pled that a government social worker sexually harassed her and retaliated against her when she complained about it and then engaged in judicial deception in violation of the Equal Protection Clause, the First Amendment, as well as the Due Process Clause of the United States Constitution. Because this case deals with retaliation, I would like to discuss the constitutional violations in chronological order. Well, actually, it would be more helpful to me, let's assume there were constitutional violations. The district judge didn't reach that. What the district judge said was, at least was effective, the First and Fourteenth Amendment claims. I'm forced by the Supreme Court to do this qualified immunity analysis. So even if I assume there were constitutional violations, but I've got to find a case somewhere that would have told the defendants that their conduct violated the Constitution. And I've got to find a relatively specific case. I can't just find a general principle. So tell me what cases, specific cases, demonstrate the constitutional violation. And I'm thinking about cases that were in existence at the time of the conduct of the defendants. Yes, Your Honor. With respect to the equal protection violation, I would like to refer this court to a case out of this circuit called Lindsay v. Chalmette. In that case, 1994, a government employee brought sex discrimination claims against a government employer. And the government employer sought qualified immunity because the employee claimed that there was But isn't this different in the sense that Ms. Sampson was not a government employee? Does that, does that case establish, and I must tell you, I regard this whole exercise as not particularly fruitful, but the Supreme Court tells us we must do it. Is that case specific enough? Yes, Your Honor. In that case, the court did not look at the context, but looked at the conduct of a government actor sexually harassing a private individual. Well, it wasn't a private individual. It was a government employee, wasn't it? It was a government employee, yes. Right, so she wasn't a private individual. She was an employee of the government. Yes, Your Honor. In that case, the court looked at various applications of equal protection with respect to discriminatory application of neutral laws, discrimination of use of peremptory challenges, and the court quoted, well, quote, stated, Well, prior to 1988, the protection afforded under the Equal Protection Clause was held to prescribe any purposeful discrimination by state actors, be it in the workplace or elsewhere, directed at an individual solely because of the individual's membership in a protected class, end quote. Why isn't that the, again, silly exercise, why isn't that the general principle? And doesn't the Supreme Court require us to find a case closer on the facts before we can find it that a reasonable officer would have known about that? No, Your Honor. With respect to qualified immunity, this, the Supreme Court held in Ashcroft v. Allkid that the law does not require a case directly on point, but the existence of president must be placed, the constitutional question beyond debate, has acknowledged that qualified immunity may be denied in novel circumstances. The constitutional question of whether a government actor can discriminate against someone based on a protected class is beyond debate. So just because we don't have a case on point with respect to a social worker sexually harassing a private individual, that does not mean that Mrs. Sampson's claims are not well established. Aren't there a lot of similarities between a relationship, in this case, and an employer-employee relationship? They meet on a regular basis, they talk on a regular basis, they're working toward presumably the same goal, that is, the welfare of the child. Can't you draw some analogies that would make it, if not on point, quite similar? Yes, Your Honor. Just like with an employee. That's a softball, by the way. Yes, Your Honor. Just like an employee-employer relationship, where the employer has most of the leverage, in this case, in order to get custody of her niece, Mrs. Sampson had to deal with this government social worker. She was afraid of complaining about this sexual harassment until she actually got legal guardianship of her niece. So in that way, with the government social worker having so much control over her activities, it's just like a government employer. I guess I'm going to, I think we're all concerned about the same issue here, because I wasn't able to find any prior decision of this circuit or any of our sister circuits, for that matter, explicitly holding that social workers are liable for sexual harassment under the Equal Protection Clause. And so trying to figure out what's the best way to show that this law was clearly established and it would, you know, would be enough here. And so it sounds like you're saying, well, we can look to the cases involving workplace, school, prison, or law enforcement context to draw enough similarity to satisfy that concern? Well, yes, Your Honor. When you look at the authority of social workers, it's similar to law enforcement. They have the authority to get warrants. They have the authority to remove or get warrants to conduct illegal seizures, which is what happened in this case. So it can be compared to law enforcement activity in that sense. However... The Equal Protection Claim, I take it, the class, the protected class is women? Yes, based on sex, Your Honor. Based on gender. So on the other claim, on the First Amendment claim, what's your best case? Your Honor, I reviewed the case called CAPP versus the city... The CAPP is after. That's my problem with CAPP. I think CAPP is probably correct. It's surely correct for our purposes, but it's, no one could have known of CAPP at the time of the activity. So tell us what case at the time of the activity was, is your best case. Well, the activity in CAPP took place in August of 2015. But the problem is that the decision in CAPP doesn't come down until last month. And so it couldn't have provided sufficient notice to the social workers of the constitutional principle, which I think, by the way, you know, the district judge assumed they violated. So tell me what case at the time of their conduct would have given them sufficient notice. Well, CAPP referred to a case called O'Brien, which provided the factors for the First Amendment retaliation claims. And in that case, they looked at whether the conduct at issue was protected by the First Amendment and whether the government actor's conduct would chill an ordinary person from engaging in a protective speech and whether there was retaliatory animus. And I think, and I think you've got enough evidence here to establish that constitutional violation. I'm still struggling with the notion of where's the, where's the case that would have told a reasonable social worker in this circumstance? Well, for example, in CAPP, even though that decision just came out last month, they held that it was well established in August of 2015. When these actions actually took place, it wasn't in 2015 with respect to Ms. Nasha Sampson. They held that it was well established that government cannot retaliate against people who speak out against the government. So even though the decision out of this circuit just came out last month, that decision does recognize that that type of conduct violates the Constitution. And that was well established law way back in 2015 when this happened. We've got a factual or a record question that maybe you can help me with. Can you run through what happened with respect to, there was a warrant, the warrant was either set aside or not enforced by a juvenile court judge, then reinstated by an appellate court, and then the child was taken for a while and then was returned. And the record's not very clear. The record in front of us is just not very clear about what happened there. Without characterizing whether anybody was telling the truth or not, can you just run through the procedural record? Yes, Your Honor. After Mrs. Sampson had obtained legal guardianship of her niece, she began to complain about the sexual harassment. No, no, I know that. I mean, I'm just trying to get to the actual, as I understand it, at some point in time, the niece was taken by her father. Right. And did that then, and she was eventually recovered? Right. In that instance, Mrs. Sampson went to a family event, and the father was present at the event. At that time, she was under the understanding, per the social worker, that the father enjoyed unmonitored visits. It was at that event that the father took the niece, but the government social worker made it seem like she allowed the father to take her. Did the warrant application follow on that event? Yes. And the warrant application said she engaged in abuse or neglect because she allowed the father to take the child? Yes, Your Honor. Okay. And then was a warrant issued? The warrant was issued, Your Honor. By a magistrator. But it wasn't executed because she was in Vegas and they couldn't find her? No. She came back from Vegas and it was executed. They went to her house and seized the child. And then what happened? Okay. After a minor is seized, similar to a preliminary hearing in a criminal case, you must have a detention hearing. They had a detention hearing within so many hours, and the juvenile court found against the government social worker, found that there were serious inaccuracies with the information used to get the warrant. Okay. And then the state goes up to and files a writ with an appellate court. And uses those same false allegations, which had... And the appellate court reinstates the warrant. No. The appellate court rules against the social worker. Sets aside the warrant. Sets aside the warrant. And after a few weeks... See, that's what I was having trouble. If the juvenile court judge didn't enforce the warrant, why was the appellate court setting it aside? Well, once you file an appeal, it puts an automatic stay on the juvenile court order. So, in effect, the child was without Mrs. Simpson for 30 days, as I recall. Yeah, for several weeks. She had to remain in foster care. What were the inaccuracies that they found to be...  That benefited your client, I guess. With respect to the government social worker, Gabe told her that the father enjoyed unmonitored visits. But when he submitted the allegations, he made it seem that she did not enjoy unmonitored visits. He also made it seem like she went to Vegas to try... The social worker? The social worker. Sorry, Your Honor. The social worker made it appear like she went to Vegas to avoid the warrant execution when she had a pre-planned trip in Vegas. Was there an eventual finding at the end of this proceeding by the juvenile judge that I assume there must have been, that your client remained an appropriate guardian? Yes, she maintains legal guardianship to this day. Now, I understand there was a warrant to take the child away, and you've told us what happened with the warrant. But was there an actual proceeding in which the truth of the allegations was adjudicated? Yes, Your Honor. With respect to the appellate court, which found against the social worker, that whole issue was about... The appellate court held that the trial judge didn't abuse his or her discretion in not enforcing the warrant, right? Yes, Your Honor. So I'm just trying to figure out, did the trial proceeding then move on to a finding of whether there was abuse or neglect, or was it solely about the warrant? It was solely about the warrant. The warrant was based on abuse and neglect, and by finding against the warrant, in that sense, it was a finding that there was no abuse and neglect. That's helpful. Thank you. Your Honor, I would like to move... I'm going to reserve your time. But can I ask one question? Sure. Please. Thank you. Under California law, tell me what difference, if any, there is between the custodial guardianship, in this case, and a permanent adoption. Is there a difference? Under California law, not really, Your Honor. Under the Welfare and Institutions Code, in order to remove a child, it is the same standard for a legal guardian as there is for a parent or for a permanent adoption. In this case, we have a Fourth Amendment violation with respect to seizure of the child. I would like to make a brief due process argument. In a case called Constance in 2009, this Court held that when there's deliberate fabrication that causes the deprivation of a liberty interest, there is a Fourteenth Amendment violation. And that's why I think Judge Zohori's question is pertinent. We know there's a liberty interest in a familial relationship between a parent and a child. What case tells us there's a liberty interest in the relationship between a guardian as your client and the child? Your Honor, we're not arguing the relationship. We're arguing that the act of retaliation... No, that's your First Amendment claim, but your due process claim, your freestanding due process claim, depends, I think, on the deprivation of a liberty interest. So we're trying to figure out whether California law gives your client a liberty interest in the guardianship. Your Honor, I see that my time is running out. May I still answer your question? Yes. Where I was getting at, Your Honor, and I hate to go back to this, but the actual deliberate fabrication of evidence resulted in a retaliation. She had a liberty interest in the First Amendment and the Equal Protection Clause. And I understand your arguments on that, but you have three arguments. You also said, I want to spend a minute on due process, and you've gotten to spend a minute on it. And my question on due process is, don't we have to have a liberty interest that's being deprived by the absence of due process before we can find a cause of action? Yes, and I submit that she does have a liberty interest in the custody, the legal custody of the child. She had a legitimate entitlement to the custody of her child because this government social worker, in order to carry out his misconduct, he had to get a warrant. He didn't have authority just to take the child. I guess I need to clarify, are you appealing the due process claim? Because I read your briefs, and I didn't see any arguments pertaining to your client's procedural due process, substantive due process, or the Monell claims. And I think, also, you state in your reply brief that your opponent's discussion of procedural and substantive due process runs far afield of the issues that she, your client, actually argues on appeal before the honorable court. So it's my understanding that you're not appealing that. Am I correct? No, Your Honor. I did not write the brief. I was put in on this case after the brief was already submitted. But because opposing counsel raised the issue of due process, I took the opportunity to address it. But your brief only raises the First Amendment and Equal Protection claims. Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. May it please the Court. My name is Jamie Verducci, and I'm arguing on behalf of Appellants' County of Los Angeles and the social worker individual defendants, Ahmed Obakume, Nicole Davis, Donna Yokoyama, and Geraldo Ibarra. I wanted to first address two key factual differences between the Sampson case and the Kapp case, which I think are also important and relevant to the Equal Protection claim made by Appellant. In the Kapp case, Appellant and his children were not parties to an active dependency proceeding at the time of the activities that involved social workers. In this case, Natia Sampson was given custody of the minor H.S. in the midst of dependency proceedings that were active. H.S. was removed from her parents for abuse and neglect and was placed as a foster care placent with the Appellant. The Appellant remained in dependency proceedings actively monitored by the Juvenile Dependency Court throughout the period of time. Does that matter? So if I'm trying to, on the First Amendment claim, the argument is you retaliated against me. You did things that would chill an ordinary person from speaking because I spoke. And does it really matter the context in which the retaliation occurred? I do think so, Your Honor. And that's because when a child is still a party to dependency proceedings, they're still a ward of the Department of Child and Family Services and the Dependency Court. So first and foremost, the department and the court is tasked with the safety and supervision of the child. And the right to remove the child is completely different than it would be if the child was enjoined. Well, I understand that, how that argument works with respect to the liberty interest. But my question is this. Let's assume we're in exactly these facts. Assume for purposes of my question that the social worker is engaging in all the conduct that's alleged here. And he says, I know what I'll do to retaliate against her for speaking out about me and telling my boss I'm a bad person. I'll make up allegations of abuse. And he does. Why isn't that a violation of the First Amendment? Well, I think that that specific issue would go to whether his conduct, which would be in this case, just as the facts are alleged, whether his reporting of abuse and neglect, which kind of sets off this course of events where a warrant is ultimately obtained, whether that is the, as stated in the CAP case, the but-for cause for the chilling of free speech. And that's what... So, but it doesn't matter that they can take the child away. The question is whether or not a reasonable person under these circumstances would be chilled from speaking out in future cases if they realized that people would bring false charges against them. Well, and what was analyzed in the CAP case as far as the but-for causes of a claim for First Amendment retaliation is that whether there is an obvious alternative explanation for the misconduct. And it was found in the CAP case there was not one pled. However, in this case, there is an obvious explanation for the conduct that's been pled with the judge. But the judge in this case didn't say, I find there was no constitutional violation. Correct? Correct. So you're asking us to decide a case, the case on a basis different than the one the judge decided? Well, I think that the issue, as Your Honor has raised, is that at the time that this case was decided and at the time that the conduct occurred, the CAP case didn't exist. Right. So on that one, I'm interested in sort of exploring those with you. Does it matter? Does it matter? Does that matter? And then in the CAP case, there's a reference in the CAP case that says this was clearly established. And so... Right. I'm trying to figure out why wouldn't the CAP case control here? Exactly. And so that's why I'm grappling with the factors that the CAP case looked into as far as how it is applicable to our case. So your point is that even if whatever the CAP case says was clearly established in 2015, the facts here are sufficiently different that a reasonable social worker wouldn't have known that, is it? Correct. But it seems like... I'm trying to figure out what the differences really are here. And here, you know, it involved a biological aunt who's seeking legal custody of her niece. I mean, what is the meaningful difference between that and a parent? I mean, she's a guardian, or, you know, the equivalent of a guardian. I think it's completely different in that the CAP case concerned a parent and child who were living independent of any government interference and came across this investigation that led to, ultimately, the removal of the child related to... It sounds like a family law proceeding that was influenced by social workers. In this case, the beginning and end of all of the facts giving rise to the retaliatory conduct are in the scope of a dependency proceeding. So we're already... we're already there. So you recap as saying everybody should have known in 2015 that you can't interfere with the relationship of a parent and a child. But that didn't tell your client that he couldn't interfere... that he couldn't retaliate in the context of this proceeding? Well, I think that CAP certainly reads... reads that the facts specific to CAP would indicate that the government official would know... or a reasonable government official would know that their conduct was violating the First Amendment rights of a parent and child. But certainly the facts in our case are distinguishable from that, such that I don't know that a government official would have... See, my problem with this, and I'm not sure it's your fault, but is it... you're really contending that a government official wouldn't have known in 2015 that it was unconstitutional to lie in a pending... in a pending proceeding? That's not what my contention is. But that's one of their arguments. Their argument is that you retaliated against me by lying in the removal proceeding. Why wouldn't a government official have known that? My contention is that those facts do not give rise to a First Amendment claim for retaliation. I'm not saying those facts are right. I'm just saying... But see, but the district court assumed that they did. And so if I, like the district court, assumed that they did, why wasn't your client... and you have to know we're not at a stage here where the facts have actually been found. But assuming the facts delight most favorable to them, why wouldn't your client be aware that it was unconstitutional to lie in a court proceeding? Of course, in certain contexts, it would be unconstitutional to present false information to the court. And that is something that was addressed specifically in appellants' due process claims for substantive due process, procedural due process. Which is not... That's not at issue, right. And so that's the problem I'm having with it. It's not something that, in the context of a First Amendment violation, would be contemplated. And really, if we're going to analyze the facts and whether they... a claim of First Amendment retaliation has been shown pursuant to the analysis in CAP, I think that there are significant problems with plaintiff's facts as pled. One being that the warrant itself, the application for it, the judicial proceedings where the alleged false information was presented, have nothing to do with the individual defendants named by appellant. The individual defendants named by appellant were social workers who were actively providing social welfare services. And there's an entirely other social worker who's named in the... Her name is listed in the complaint, but she's not listed as a defendant, who I believe her name is... It's on page 33, paragraph 144 of plaintiff's complaint. He names another social worker, who's the social worker who investigated the... But that's another issue the district court didn't rule on. Right. Yes. So the district courts... I don't have to get to any of this because there's qualified immunity. Sure. If there's not qualified immunity, the district court can sort that stuff out. So that's why we're... That's why I'm focused at least on the qualified immunity question. Yep. May I ask... Oh, I'm sorry. Go ahead. Go ahead. May I ask you a little different question? Sure. Is it your position that the defendant... And I can't pronounce his name well, I'm sure, but we'll say Defendant O, right, the key social worker here. Is it your position that he was not on notice at that time that subjecting a legal guardian to unwanted sexual advances in exchange for whatever, that that was unlawful? You're not taking that position, are you? No, Your Honor, I'm not taking that position. However, I don't think that the two claims that are at issue here, which is the First Amendment retaliation or the Equal Protection Clause are really something that would address that issue. I think that that issue is better served by many of the state law claims that plaintiff actually, or appellant, actually referenced in his brief, and those aren't at issue here. So the 14th Amendment claim that your friend describes goes like this. I was discriminated against by the state on account of my gender because I assumed this social worker didn't make sexual advances to men. Made the advances on me because I was an attractive woman, and that violates the 14th Amendment. Why wouldn't the state have been on notice, or the defendant had been on notice reasonably at the time of this conduct that that was discriminatory conduct? Well, I think as the court has addressed, there is really a complete lack of any case law establishing such a fact. But is that because it's obvious? Well, but I think that it's obvious in a different context in terms of a violation of civil rights for an Equal Protection Clause claim. But that is the claim they're making. Right, exactly. And I'm saying it's the wrong forum. I think that there are avenues to make the complaint, but I do not think that an Equal Protection Clause claim is the right one. Let me change the facts for you a little bit. Let's assume she goes to apply for legal guardianship and the social worker says I will oppose that unless you have sex with me. Would that give rise to an Equal Protection Claim? Well, I think the problem is the standing of the appellant, and this is something that was... And that's why you keep coming back to that. I have some difficulty with that, because you say, look, she's not entitled to be the legal guardian. And I agree she's not entitled to be the legal guardian. But if the government discriminates against someone in the provision of services because they're a woman, why doesn't that give... Wasn't that just clearly an Equal Protection violation? Well, I think that the key issue is that the services aren't being provided to appellant. The services are being provided to the minor. The minor's not a party here. The dependency court is about serving a minor and their biological or custodial parents who are in the midst of dependency proceedings and determining what's in the best interest of the child. So the services that were being provided to Ms. Sampson throughout these dependency proceedings were not for Ms. Sampson's benefit. They were for H.S.'s benefit. Just assume for a minute that the social worker did do something inappropriate, sexual harassment, whatever sexual abuse, to someone like Ms. Sampson. She has no remedy. That's absolutely not what I'm saying. I just want to understand. You're wanting us to focus on the fact that the service is provided to the dependent here. And so I understand that. But I'm trying to figure out how that makes a difference in light of the claim. And the reason why it makes a difference is because it's a violation of civil rights. We're not talking about a tort claim. We're not talking about a harassment claim. So what would, in your view, be her claim? Where would she go for relief? Well, I think as plaintiff, or appellant, appropriately referenced in her brief, there are state law claims and other remedies she could have sought to address this issue. Such as? Such as a tort claim for harassment, a tort claim for negligence. There are lots of claims that could have been proceeded on that were not. And because they're proceeding here in federal court under civil rights, you think that's problematic? Correct. Because? Because there is no basis for holding a government official liable and they're entitled to qualified immunity. Well, there are two separate points to that analysis, right? The first point in the qualified immunity analysis is, has there been a constitutional violation? And the district court says, I assume there was. What you're saying, too, is that we shouldn't assume there was. We should go back independently and find that there wasn't because the only things that were taken away by your client's actions, alleged actions, were benefits due to the kid. Right? Well, I'm only raising the issue of analyzing whether it was properly pled because that was something that was Well, but see, my problem here, the district court is very specific. The district court says, I assume there's a constitutional violation, but I've now got to go through the second step of this analysis and find a case that's close enough so that I can say your clients were on reasonable notice. And that's you know, so tell me why tell me why, again, a case that basically says you can't discriminate in the provision of services. The government can't discriminate on the basis of gender. And discrimination against somebody in the workplace on the basis of gender is violated. Why isn't that enough to put your client on notice? Well, I think there are significant marked differences between the relationship of an employer and an employee and a social welfare agency and a foster placement. And there is significant case law in the specific issue and establishes that there is not an employment relationship between an agency and a foster care placement. Do you view this case of legal dependency different from foster care? No, I believe it is the same as foster care. Although there were guardianship rights that were sought and obtained by Ms. Sampson, she didn't have adoptive rights, meaning the court was still the ward of the child and was still monitoring the case. How long would they monitor? Is there a time period? They come once a month. But for how long a time period? So it looks like from the pleading that this was in the process of closing out the case where she would not be monitored anymore. However, it had not closed at the point in time where these events happened. Would that make a difference to you if she had? Yes, that would make a significant difference if the dependency agency was no longer in this family's life and inserted itself in this way. Yes. So I guess you're saying there's a difference between, you know, these two scenarios. But if we frame it just a little bit differently, because I'm wondering if that's still true because  legal guardianship of H.S. here, Ms. Sampson, was requesting a benefit of the department, the benefit being the legal guardianship. So it seems that all 1983 requires is for the person to act under the color of state law, which the social worker here is acting under the color of state law. So isn't that enough? Well, I think that the guardianship and obtaining guardianship is something that the court awards. It's not something that dependency agency has any involvement in. That's something separate. The dependency agency is going to treat Ms. Sampson as a guardian the same way that they're going to treat any other foster parent. And the same requirements are in place as far as they're monitoring the child, making sure they're safe. And certainly, let me point out that if something had happened to H.S. when she was taken for two days by her father and then found unclothed in a room where people were using illegal substances, I can guarantee you that it would be the department who would be responsible. Thank you very much. We're in a bit over time. I'll give you two minutes. Thank you, Your Honor. I would like to address Cap with respect to the conduct that chilled an ordinary person. Cap was faced with the threat of losing custody of his child. But in Cap, it was a parental right. And the court seems to put a lot of weight on the notion that anybody should know that lying to take a child away from his parent violates the Constitution. So could you address why in this circumstance anybody should know that too? Yes. This case involves false allegations of child abuse, which not only could lead to criminal implications but also could be a ground for the Child Welfare and Institution Code to remove Mrs. Sampson's own biological children from her. And with respect to the government social worker only providing benefits to the child, under the Welfare and Institution Code, social workers have a duty to seek out blood relatives before a child is going into the foster care system, before parental rights are going to be terminated. In fact, this social worker was the one that reached out to Mrs. Sampson. She didn't even want legal guardianship at first because she doesn't get along with the biological father. She went on and took on that duty. With respect to not knowing or having no knowledge that this was a constitutional violation, as this court pointed out in Hardwick in 2017, the government California Government Code states that social workers who engage in fabrication of evidence lose qualified immunity when they do that under the Welfare and Institution Code. So it was clearly established that judicial deception is a violation of law. And for those reasons, I ask for this court to reverse the district court's decision. Thank you. Thank you very much. I very much appreciate both of your arguments in this very challenging case, Mr. Clark and Mr. DiCicci. Thank you both. The case of Nadia Simpson v. County of Los Angeles is now submitted.
judges: Murguia, Hurwitz, Zouhary